# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARENCE SPEARMAN, | Civil Action No. 2:17-cv-076 |
| Plaintiff, | Magistrate Judge Lisa Pupo Lenihan |
| v. | |
| PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, | ECF No. 36 |
| Defendant. | |

## MEMORANDUM ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Currently pending before this Court is the Motion for Summary Judgment (ECF No. 36) filed by Defendant Pennsylvania Department of Transportation ("DOT"). The Motion requests that Defendant be granted summary judgment on each of the three claims set forth in Plaintiff's Amended Complaint of April 3, 2017 (ECF No. 11), in accordance with Federal Rule of Civil Procedure 56. *See* Defendant's Brief in Support, ECF No. 37. Plaintiff has filed a Brief in Opposition thereto (ECF No. 46) and both parties have filed Concise Statements of Material Fact (ECF Nos. 38 and 47). Thus, the motion is ripe for disposition.

Counts I and II of the Amended Complaint allege that Defendant employer denied Plaintiff a promotion because of his race in Summer 2015 and again in January 2016, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. Count III alleges Defendant's related retaliation as to the latter promotion

denial.[1]  Defendant asserts that, assuming *arguendo* that Plaintiff has stated a *prima facie* case, DOT has set forth legitimate non-discriminatory, non-retaliatory basis for its decisions and Plaintiff has failed to meet his responsive burden of evidence that the proffered reasons were pretext.  *See* Defendant's Brief in Support, ECF No. 37.  In light of Plaintiff's concurrence, Count III for retaliation will be dismissed and motion for judgment on that count denied as moot.  For the reason which follow, the remainder of Defendant's motion will also be denied.

I. **Background**

Defendant has employed Plaintiff, an African-American, as a full-time Tunnel Maintainer since 1993 (and has been stationed at the same, Squirrel Hill, location for approximately 15-17 years).  Plaintiff's Concise Statement of Material Facts ("Plaintiff's SMF"), ECF No. 47 at ¶¶ 1-6; Defendant's Statement of Material Facts ("Defendant's SMF"), ECF No. 38.  In Plaintiff's District (the 11th), Defendant employs approximately 1 Tunnel Maintenance Supervisor to every 3-4 Tunnel Maintainers.  *Id.* at ¶¶ 9-10, 16.  Thomas Diddle ("Diddle") was the Tunnel Manager of Plaintiff's District for 19 years and Ben DeVore ("DeVore") was promoted to that position following Diddle's retirement in the Fall of 2015.  *Id.* at ¶¶ 10-12.  Mark Robertson ("Robertson") has been the Assistant Tunnel Manager since 2011.  *Id.* at 13.  Diddle, Devore and Robertson are Caucasian.  Plaintiff's direct Tunnel Maintenance Supervisor for approximately 9-11

---

[1] Plaintiff, in his Brief in Opposition, has "agree[d] to dismiss the retaliation claim." [ECF No. 46 at 3](ECF No. 46 at 3), n. 1.

2

years was Charles Diulus ("Diulus"), who retired in July, 2015.  Diulus "highly recommended" Plaintiff repeatedly for promotion, *see, e.g.*, ECF No. 49-2 at 24 (Letter of Diulus], and Plaintiff repeatedly was passed over - sometimes for individuals with less than a year's experience.  Diulus attests that prior to Diulus' retirement, Diddle lowered the ratings in Plaintiff's Performance Evaluation without any basis in personal observation, attempted to require Diulus to sign the Evaluation as down-graded by Diddle, and brought disciplinary charges against Diulus for refusing (which charges were dismissed).  *See* ECF No. 47 at ¶¶ 21-22, 33, 34-41.[2]  Plaintiff attests that he signed up to attend Tunnel Maintenance Supervisor training to qualify to act in a temporary capacity ("TWOC", or Temporary Working Out of Class, training). Diddle removed his name from the list and told him he could not attend because Diddle did not want him there.  *Id.* at ¶¶ 46-50.  *Compare* ECF No. 38 at ¶39 (disputing that anyone prevented or prohibited Plaintiff from attending training).

Defendant identifies its Summer 2015 Tunnel Maintenance Supervisor ("TMS") selection criteria as interview performance, current Employee Performance Rating, current leave balance, TWOC training and discipline record.  *See* ECF No. 38 at ¶ 34. The three-member Interview Panel was comprised of Diddle, Robertson, and James Keys ("Keys"), an African-American Senior Highway Maintenance Manager in the District.  Plaintiff was one of two African-American candidates, and eight Caucasian

---

[2] *Cf.* ECF No. 46 at 23 (Robertson testified he believed Plaintiff was not supervisor material in part because Robertson had heard that Diulus was "covering" (not turning in truthful reports) for Plaintiff).

3

candidates, whose names were forwarded by the Human Resources Department as eligible for interview. *Id.* at ¶¶63-65. David Dienert ("Dienert"), a Caucasian employee, was put forward by Diddle, on behalf of the Interview Panel, but his selection was questioned by Defendant's Human Resources ("HR") management. The HR response highlighted concerns regarding Dienert's disciplinary record of failing to disclose a pending criminal charge of simple assault on his employment application.[3] It also raised questions regarding asserted distinctions/comparisons as to the applicants' respective attendance/sick leave records, and Employee Performance Ratings – which were proffered as bases for Dienert's selection over either minority applicant. *Id.* at ¶¶ 83-99 (referencing exhibits). [4] Ultimately, Marks, a Caucasian employee with "no disciplinary history whatsoever", was selected and awarded that promotion. Defendant's SMF, ECF No. 38, ¶¶ 33- 34; ECF No. 46 at 7.[5] Plaintiff filed a Charge of Race Discrimination with respect to denial of this Summer 2015 promotion. ECF No. 47 at ¶ 112.

---

[3] Dienert's employment record of discipline for his false statement was signed by Diddle. The HR Department records raise a concern that other employees were discharged for dishonesty in applying for employment. *See* ECF No. 47.

[4] On HR's request, specifics of interview performance assessments were supplementally included in the selection justification. *Cf.* ECF No. 38 at ¶¶ 28-29 (citing notes that Plaintiff had an "attitude that he had the job" in interview and "did not present a . . . desire to be at the interview"); *compare* record evidence regarding extensive number of years and available TMS positions over which Plaintiff applied for but had not attained the job, *see, e.g.*, ECF No. 46 at 10 (citations to Plaintiff's SMF, ECF No. 47).

[5] *See* Defendant's SMF, ECF No. 38, at ¶¶ 30-31 (noting Dienert's "non-selection" "due to prior misinformation issues").

4

Defendant identifies its January 2016 TMS selection criteria as interview performance, references, current Employee Performance Rating, current leave balance, TWOC training, discipline record, and relevant past experiences with supervisors/management that was considered beyond the effort/thought of an average Tunnel Maintainer.[6] Defendant's SMF, ECF No. 38, ¶ 73; ECF No. 46 at 7. The three-member Interview Panel was comprised of DeVore (who assumed Diddle's position), Robertson and Keys. Plaintiff was one of three African-American candidates, and six Caucasian candidates eligible for interview. *Id.* at ¶¶63-65. Having been employed by Defendant for 35 years, Keys retired quite shortly after the January 2016 interviews and attests that he was unaware of any selection made. *Id.* at ¶¶ 124, 128-31; *compare id.* at ¶ 148 (Robertson attests selection was a unanimous decision, although he never reviewed Plaintiff's disciplinary record or Performance Ratings). Dienert was again put forward, this time by DeVore and this time he was awarded the promotion. Dienert's employment record had been revised to remove his prior discipline. *Id.* at ¶155.[7] The

---

[6] The Court notes some potential redundancy in the individually-identified criteria of Performance Rating, "relevant past" instances of superior job performance, references (as by, *e.g.*, the recommendation of the direct Supervisor also completing the Performance Rating), and perhaps TWOC training.

[7] *See also* ECF No. 46 at 21-22 (noting that (1) Dienert was formally counseled and the reprimand removed from his official personnel file in 2008 and (2) DeVore included statement the Dienert had no disciplinary record in 2016 promotion); *id.* (citing to Defendant's SMF, ECF No. 38, at ¶ 78 and Plaintiff's SMF at ¶¶ 153-55).

5

panel members' recollections and notes as to Plaintiff's personal interview, and the selection proceedings/determination, conflict. *See generally* ECF No. 46, ECF No. 47.[8]

Plaintiff further avers that Tunnel Manager Diddle previously told Plaintiff "he did not like him or 'his kind'." ECF No. 46 at 9. The statement alleged could be consistent with the testimony of Plaintiff's retired Supervisor, Diulus, that Diddle took actions both unusual and adverse to Plaintiff's employment status/record and opportunities for promotion. *See* ECF No. 46 at 9-12. In addition, Plaintiff provides employment history evidence that Assistant Tunnel Manager Robertson, another member of the three-person selection panel, "had used a derogatory racial slur in the work place," and was subsequently promoted. ECF No. 46 at 9; ECF No. 47 ¶¶75-81 (noting Robertson admitted use but denied racist intent).[9] *See also generally* ECF No. 46 at 21-21 (listing other charges/actions arising from instances of alleged acts of racial animus or discrimination in Defendant's Tunnel Maintenance work environment and promotional practices), ECF No. 47.

## II.     **Legal Standard of Review on Summary Judgment**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of

---

[8] *Cf.* ECF No. 38 at ¶¶ 70 ("Again, Plaintiff interviewed like he 'had the job,' and 'was the next in line.'").

[9] *See* ECF No. 46 at 12-13 (Robertson admitted telling a Caucasian employee who intended to put funky colors on his truck not to "nigger-rig" it).

6

the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).

In deciding a summary judgment motion, the nonmoving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *Watson v. Abington Twp.*, 478 F.3d 144, 147; *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Id.* at 324, 106 S.Ct. 2548. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting

unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). And the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record could not lead a rational trier of fact to decide in favor of the nonmoving party, no genuine dispute exists. *Id.* at 587.

III. **Analysis**

Plaintiff asserts claims of racial discrimination pursuant to Title VII arising from Defendant's failures to promote him to a Tunnel Supervisor position opening in 2015 and 2016.[10] Ultimately, Plaintiff must prove that Defendant treated him less favorably because of his race. *See Desert Palace, Inc. v. Costa,* 539 U.S. 90, 92–93, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Int'l Bhd. Of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

Title VII provides, in pertinent part, that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C, § 2000e–2(a)(1). The parties do not dispute that during the period of time relevant to this case, Defendant was an "employer" subject to Title VII's provisions, 42

---

[10] The parties do not dispute that Plaintiff has exhausted his administrative remedies. *See* Section II; Amended Complaint, ECF No. 11.

8

U.S.C. § 2000e(b), and Plaintiff was an "employee" entitled to statutory protection from race-based discrimination, 42 U.S.C. § 2000e(f).

Since this is an employment discrimination case in which no direct evidence of discrimination is presented, the Supreme Court's analyses in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), provide the familiar formulation for allocating the requisite burdens of proof and production for purposes of the pending Motion. The *McDonnell Douglas* analysis proceeds in three steps. First, the plaintiff must establish *a prima facie* case of illegal discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Second, if the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for treating the plaintiff in an adverse manner. *Id.* at 802–803, 93 S.Ct. 1817; *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) (a *prima facie* case "raises an inference of discrimination" sufficient to shift the burden of production to the defendant); *Burdine,* 450 U.S. at 254–255, 101 S.Ct. 1089. Third, if the defendant articulates a legitimate, nondiscriminatory reason for the plaintiff's adverse treatment, the burden then shifts back to Plaintiff to establish by a preponderance of the evidence that the Defendant's stated reason is pretextual. *Id.* at 804, 93 S.Ct. 1817; *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015).

Specifically, to defeat summary judgment when the defendant articulates a legitimate, nondiscriminatory reason for the plaintiff's adverse treatment, "a plaintiff

9

who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994) (emphasis in original). Therefore, "if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." *Id.*

### A. Plaintiff's Prima Facie Case

The plaintiff's burden of establishing a *prima facie* case of disparate treatment is not onerous, *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089, and the elements of a *prima facie* case depend on the facts of the particular case, *see Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 411 (3d Cir.1999); *Sarullo v. United States Postal Service,* 352 F.3d 789, 797–98 (3d Cir.2003) (the *prima facie* inquiry "remains flexible and must be tailored to fit the specific context in which it is applied"). At the summary judgment stage, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case." *Duffy v. Paper Magic Grp.,* 265 F.3d 163, 167 (3d Cir.2001). Generally speaking, in order to establish a *prima facie* case of racial discrimination, the plaintiff must demonstrate that: (1) he was a member of a statutorily-protected class; (2) he was qualified for the position at issue; (3) he was aggrieved by an adverse employment action,. . . ; and (4) similarly situated persons who were not members of his protected class were treated more favorably, or there are other circumstances giving rise to an

10

inference of racial discrimination. *Jackson v. Univ. of Pittsburgh,* 826 F.2d 230, 233 (3d Cir.1987), *cert. denied,* 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); *Jones,* 198 F.3d at 410–411; *Burdine,* 450 U.S. at 258, 101 S.Ct. 1089.

Here, it is undisputed that Plaintiff (1) was a member of a protected class and that he (2) applied for and was denied promotion to the Tunnel Supervisor positions. ECF No. 46 at 3, 5 (providing record citations). Although Defendant appears to take inconsistent positions on Plaintiff's "qualification for the position",[11] Plaintiff met the objective eligibility requirements of Defendant's job vacancy announcements. *See* ECF No. 46 at 4 (providing recording citations). Moreover, in both 2015 and 2016, Defendant placed Plaintiff on its list of employees eligible to interview, and proceeded to interview him. *Id. See also, e.g., Matczak v. Franford Candy & Choc. Co.*, 136 F.3d 933, 938 (3d Cir. 1997) (for purposes of a *prima facie* case of discrimination, qualification is a question of objective measures); ECF No. 46 at 4-5 (additional citations). It is undisputed that in both 2015 and 2016 the vacancies were filled by Caucasian employees, Marks and Dienert. (Indeed, as noted *supra*, the 2016 promotion was awarded to Dienert, who had been designated as selected for the promotion, but ultimately rejected for promotion to Tunnel Supervisor, six months prior). *See* ECF No. 46 at 5-6. Moreover, Plaintiff has also provided evidence of racial animus. *See* discussion *infra*. A reasonable jury could

---

[11] *Compare* Defendant's Brief in Support at 11 ("Spearman . . . is not able to establish with any certainty beyond speculation that he was either qualified for the position [*sic*] which he applied . . .").

11

conclude that Defendant's actions were taken under circumstances giving rise to an inference of racial discrimination. In short, Plaintiff has made out his *prima facie* case.

### B. Defendant's Proffer of Legitimate, Non-Discriminatory Reason

As Plaintiff concedes, Defendant has proffered legitimate, non-discriminatory reasons for passing Plaintiff over for promotion. It asserts that Marks and Dienert were the "best suitable candidates" for 2015 and 2016, respectively, and it asserts specific (albeit differing and significantly subjective) selection criteria. *See* ECF No. 46 at 7; *id.* (properly noting that subjective criteria, such as the "interview performance" on which Defendant heavily relies, are more susceptible to discriminatory manipulation) (citing *Tomasso v. The Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

### C. Plaintiff's Evidence of Pretext

Defendant's Motion ultimately turns on whether Plaintiff has advanced sufficient record evidence for the pretext issue to go to the jury. Under the Third Circuit's decision in *Fuentes,* the "basic framework under Title VII illustrates that, to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably *either* (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes,* 32 F.3d at 764 (emphasis in original). "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is

12

whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765. Instead, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] nondiscriminatory reasons.' " *Id.* (emphasis in original). It appears that here, Plaintiff proceeds under both *Fuentes* prongs: he both attacks the credibility of Defendant's articulated reason for his termination and offers additional evidence of Defendant's allegedly discriminatory animus against him.

As well-explicated in Plaintiff's Brief in Opposition, Defendant's articulated legitimate reasons for its failure to promote Plaintiff in 2015 and 2016 have varied. *See* ECF No. 46. The extent of consideration by the Interview Panel members of the candidate's interview performance, the ultimate weight given to it, and Plaintiff's statements and performance are the subject of both inconsistency and contradiction in both Defendant's records and the Panel members' testimony.[12] Defendant's own HR reviewers raised concerns regarding the treatment of Plaintiff's leave time and/or

---

[12] *See* ECF No. 46 at 17-19 (citing inconsistencies in DeVore's accounts of inadequacies in Plaintiff's 2016 interview as compared to Robinson's notes) *id.* at 19 (Plaintiff's testimony that Keys told him he had done well in 2016 interview but would not get the job). *See also Snooks v. Duquesne Light Co.*, 314 Fed. Appx. 499, 504 (3d Cir. Feb. 24, 2009) (finding evidence supporting pretext where interviewer's notes indicated employee mentioned policy, where employer cited its omission as indicative of poor interview performance).

13

discipline record as compared to the treatment of Dienert's. And the weight and justification given to a candidate's discipline record and interview appears to vary significantly as reported in assessing Plaintiff's candidacy in August 2015, as applied to Dienert, and as a factor in January 2016. The manner of decision- making and selection for the January 2016 promotion is also a matter of some contradiction amongst the Interview Panel members,[13] and even within Defendant's own pleadings.[14] As Plaintiff notes, "a jury certainly could conclude Defendant manipulated the decision- making process . . . ." ECF No. 46 at 16.

In sum, Defendant's evidence demonstrates "such inconsistencies" in its articulated nondiscriminatory reasons that a jury could rationally find the articulated reasons unworthy of credence. The jury could find that Defendant did not act on the basis that it claims. It could also find that Plaintiff's race was a substantial motivating factor in Defendant's decisions about his promotion.

Plaintiff has proffered additional, more express evidence of invidious discriminatory motivation at play. For example, as set forth in Plaintiff's Brief in Opposition, ECF No. 46, Plaintiff alleges with evidence that two of the three members of the 2015 and 2016 promotion panel had either (a) a documented work history of racially

---

[13] *See* ECF No. 46 at 20 (citing contradictions in testimony of DeVore, Robertson and Keys).

[14] *Compare* Defendant's SMF, ECF No. 38, at ¶ 69 (stating Dienert was chosen in 2016 "[b]ased on the panel's unanimous recommendation") *with id.* at ¶ 87 ("Mr DeVore in deciding which candidate was promoted . . . ."). *See also* ECF No. 37 at 6-7, 13 ("decisionmaker for the 2016 application was Ben DeVore").

14

offensive language[15] or (b) expressed racial animus directly to Plaintiff.  He also testifies that the Tunnel Manager who expressed animus barred him from the very training then credited in selecting Caucasians for promotion[16].  And he proffers the testimony of his retired Supervisor that the Tunnel Manager down-graded Plaintiff's Employee Performance Rating prior to the Summer 2015 promotion opportunity, and attempted to obtain Supervisor Diulus' signature on the revised EPR. [17]  Finally, Plaintiff proffers evidence of discrimination against others in his protected class.  *See* ECF No. 46 at 24-25 (citing *Fuentes*, 32 F.3d at 765); *supra* at 6.

Simply put, Plaintiff has advanced more than sufficient record evidence to go to the jury.  Accordingly, the Court enters the following Order:

**AND NOW,** this 25th day of February, 2019, **IT IS HEREBY ORDERED** that Count III of the Amended Complaint (ECF No. 11) is voluntarily dismissed.

---

[15] *See White v. Honeywell, Inc.*, 141 F.3d 1270, 1274-76 (8th Cir. 1998) (holding use of this term by decisionmaker can even constitute direct evidence of discriminatory animus).

[16] *See Grassmyer v. Shred-it USA, Inc.*, 392 Fed. Appx. 18, 28 (3d Cir. 2010) (summary judgment reversed; factual issues existed on assertedly sales-quota based firings where men receiving training/assistance to meet sales quotas and women requested and were denied).

[17] *Cf.* ECF No. 46 at 11 (citing ECF No. 47 as to Diddle's testimony that he cannot recall whether he told Plaintiff he could not attend TWOC training or asked Diulus to change Plaintiff's performance appraisal).

**IT IS HEREBY FURTHER ORDERED** that Defendant's Motion for Summary Judgment ([ECF No. 36](ECF No. 36)) is **DENIED** as moot as to the dismissal of Count III and otherwise **DENIED**.

BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

Cc: All counsel of record